Sharon L. **PARKER**, Plaintiff, Appellee,

v.

**CITY OF NASHUA, NEW HAMPSHIRE,**
et al., Defendants, Appellees,

F. **Sheehan**, in his Official Capacity as a
Nashua Police Officer, Defendant,
**Appellant.**

Sharon L. **PARKER**, Plaintiff, Appellant,

v.

**CITY OF NASHUA, NEW HAMPSHIRE,**
et al., Defendants, Appellees.

Nos. 94–1210, 94–1272.

United States Court of Appeals,
First Circuit.

Heard Nov. 6, 1995.

Decided Feb. 5, 1996.

---

Thomas Quarles, Jr. and Dyana J. Crahan with whom Robert E. McDaniel and Devine, Millimet & Branch, P.A., Manchester, NH, were on briefs for defendants.

Francis G. Murphy, Jr. with whom Joseph F. Keefe, Kathryn B. Johnston, and Hall, Hess, Kenison, Stewart, Murphy & Keefe, P.A., Manchester, NH, were on briefs for plaintiff.

Before SELYA, Circuit Judge, BOWNES, Senior Circuit Judge, and BOUDIN, Circuit Judge.

BOUDIN, Circuit Judge.

In the district court, Sharon Parker was awarded substantial damages by a jury which found that a police officer had violated her rights in the course of an arrest. On this appeal, almost the only issue presented, and certainly the only one warranting discussion, is a claim that the district court erred in describing for the jury the state disorderly conduct statute used by the police officer to justify Parker's arrest. Because the issue is narrowly framed, our description of the factual background is brief.

Late in the evening of February 10, 1990, Parker returned by car to her parents' house in downtown Nashua, New Hampshire, from a dance at the local Moose Club. There were six passengers in the car: Parker and her husband, Parker's parents, her sister, and her sister's companion. The companion owned and drove the vehicle. Parker has a disorder affecting the left side of her body; and for this reason she does not drink alcohol.

When the car reached the house, Parker and her husband entered their own car, which had been left in front of the house prior to the dance. At that point a police cruiser driven by officer James Lima pulled up behind the Parkers' car and flashed its light. The officer previously had been parked by the side of the road when Parker and her companions drove by, en route from the dance to the home of the Parker parents. The officer later testified that he thought that the car's driver had committed traffic violations. It is unclear whether the officer confused the two cars, but when Parker got out of her own vehicle in response to the flashing lights, the officer asked for her license and registration.

At this point, the police version of what occurred begins to diverge sharply from that of Parker and her companions. According to

Lima, he was assaulted by Parker's husband, Parker's sister, and the sister's companion. Lima pressed a button calling for emergency backup. Two other officers arrived. The struggle continued and Parker's husband was buffeted. Ultimately, the husband, sister, and sister's companion were arrested. By this time, Parker's parents and others had come out to the scene.

Additional police arrived, including Officer Frank Sheehan, who eventually arrested Parker herself. Officer Sheehan's later testimony was that he saw Parker standing in the road yelling at the other officers, using obscenities. He told her to quiet down and leave the road. According to Sheehan, eventually Parker moved to the sidewalk but continued to yell. At that point Sheehan said he arrested Parker for disorderly conduct.

Parker's description of events is quite different. In her own later testimony, she denied being in the road and claimed to have said to Officer Sheehan only that she wanted to go to the police station with her husband who was being arrested. Sheehan, she says, responded with an obscenity, declaring that the police car was not a taxi. Parker testified that she simply turned away and walked toward the house, saying to her mother that this was "the most unbelievable thing I've ever seen."

In all events, Parker was handcuffed, offering no resistance. She later offered medical testimony that her shoulder and upper arm, already susceptible to injury because of her medical condition, were wrenched during the handcuffing. Then, en route to the police cruiser, she says that she was pulled or tugged by the handcuffs so that she fell on the ground and was then dragged by the police over a snow bank. The police version is that this was an accidental fall.

Parker was arrested for and charged with disorderly conduct. The charges were eventually dropped by the authorities. In due course, she brought the present action in district court against the City of Nashua, the Nashua Police Department and various officers including Sheehan. Her federal claim under 42 U.S.C. § 1983 was based on her rights under the Fourth and Fourteenth Amendments to be free from unreasonable seizure. She also asserted state law claims based on her allegedly unlawful arrest. The case was tried before a jury in January and February 1994.

At the trial, Parker and the police offered their respective versions of what had happened. There was testimony from Parker, Sheehan and a number of other witnesses on both sides who had been present at the scene. Parker, who was a government social worker, proffered medical and economic evidence to support a very substantial award of damages. The jury returned a large verdict for Parker against Sheehan (although smaller than requested), finding specially that Parker's rights under both federal and state law had been infringed.

On this appeal, defendants' central claim is that the district court erred in failing to charge the jury properly as to the offense for which Parker was arrested. The premise of Parker's claim was that she had been arrested even though the police lacked probable cause to believe that she had committed or was committing an offense. See Michigan v. DeFillippo, 443 U.S. 31, 36, 99 S.Ct. 2627, 2631, 61 L.Ed.2d 343 (1979). To decide whether the police had probable cause, the jury had to match what they found to be the facts—more accurately, the reasonable perception of police as to those facts—against the elements of the offense.

The New Hampshire disorderly conduct statute, N.H.Rev.Stat.Ann. § 644:2, comprises the misdemeanor offense labelled disorderly conduct; but the statute, reprinted in an appendix to this opinion, describes nine different ways of committing the offense and covers over a page of single-spaced text. Several of the offenses described in the statute were arguably pertinent to the police version of events; others—e.g., interference with a firefighting operation or obstructing the entrance to a public building—had nothing whatever to do with the arrest.

A reading of Sheehan's trial testimony strongly suggests that the disorderly conduct offense that he deemed Parker to have committed fell under section III(a) of the disorderly conduct statute. That provision is directed at anyone who purposely causes a

breach of the peace, annoyance or alarm, or reckless risk of these consequences, by making loud or unreasonable noises in a public location. Sheehan's testimony at trial emphasized the loud noises that he said Parker was making and the risk that the gathering crowd would be incited.

It is difficult to be sure just how the parties treated the matter when presenting their case, because parts of the transcript (*e.g.*, the closing statements) have not been provided by defendants. But it is clear that when it came to charging the jury, the defense in its requests to charge asked the judge to read almost all of the disorderly conduct statute to the jury. The trial judge confined his charge to the loud noise offense described in section III(a). The court's refusal to charge more broadly is now assigned as error.

We will assume for purposes of this appeal that Sheehan was entitled at trial to justify his arrest of Parker under any provision of the disorderly conduct statute that the evidence at trial might show to have applied to her conduct. There was some evidence from the police witnesses to suggest that Parker used obscenities and refused to comply with a lawful police order; it is more doubtful that the evidence showed any obstruction of traffic. Thus a request that the jury be instructed as to at least two of these other disorderly conduct offenses was arguably proper.[1]

■ An initial difficulty is that Fed. R.Civ.P. 51 provides that "[n]o party may assign as error ... the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." Further, to satisfy Rule 51 "the judge must be told *precisely* what the problem is, and as importantly, what the attorney would consider a satisfactory cure." *Linn v. Andover Newton Theological School, Inc.*, 874 F.2d 1, 5 (1st Cir.1989). And the lawyer must propose a lawful instruction or correction, and not one that substantially overstates the law in that

party's favor. *Scarfo v. Cabletron Systems, Inc.*, 54 F.3d 931, 944 (1st Cir.1995).

In this instance, after the district court instructed the jury, defense counsel promptly objected to the failure to read the "entire disorderly conduct statute" to the jury. When the court said that Parker had been charged only with violating section III(a) and "[n]obody claims she was violating the rest of it," defense counsel responded:

> We adduced testimony in evidence that she violated that section where she was declining to comply with a reasonable order of a police officer, which I think is toward the end of the substantive sections of it.

The trial judge said that he did not think that "it" (presumably referring to the evidence) would support such a charge, noted defense counsel's objection, and moved on.

■ The defense gave the district court no justification for reading the entire statute to the jury and so failed to tender a legally correct instruction. This requirement is no formality: the trial court, especially in hearing objections after the instructions have been given, is making on-the-spot choices; and when the instruction offered by the lawyer is manifestly overbroad, the district judge may reject without assuming the burden of editing it down to save some small portion that may be viable. *Chase v. Consolidated Foods Corp.*, 744 F.2d 566, 570 (7th Cir.1984).

■ Certainly in this case the defense request that the court read to the jury almost all of the disorderly conduct statute was properly denied. A number of the offenses listed had no possible relevance to the case. On appeal, defendants make no attempt to show otherwise. To allow the jury to wander aimlessly among the various paragraphs would have been an invitation to confusion and would be no more proper than reading to the jury in a criminal case a description of offenses with which the defendant was not charged.

The story of the requested instruction is not over. During jury deliberations, the jury

---

1. We say "arguably" because the problem of justifying an arrest on grounds not invoked at the time becomes especially complicated where

some of the facts were known only to other officers. *See generally* 2 W. LaFave, *Search and Seizure* § 3.5(c) (2d ed. 1987); *id.* §§ 5.1(e).

submitted a question, "Can we got a copy of the disorderly conduct law; i.e., what constitutes this violation." At this point, defense counsel again stated that the entire statute should be read, asserting that the question for the jury was "whether probable cause existed for the officer on the scene to believe that the plaintiff committed the offense of disorderly conduct." The court refused to read the whole statute, and instead reread its original instruction to the jury. Defense counsel then objected:

> Your Honor, we simply object to the Court not describing all the circumstances in the statute where a person can commit disorderly conduct or when an officer could reasonably believe that disorderly conduct was committed, especially the sections of the statute which relate to engaging in tumultuous behavior or knowingly refusing to comply with the lawful order of a peace officer to move from any public place, which by itself is enough, or directing obscene language or obstructing vehicular or pedestrian traffic on the street, all of which there is testimony on.

This court has not decided whether an initial request for an instruction, not properly presented, can be resurrected by a proper request made when the jury is reinstructed. Surely when a *new* instruction is given to the jury during its deliberations, a new opportunity exists to object or propose changes; but few cases address what happens when the jury is simply given the original instruction again and the lawyer now makes an objection, or seeks an alternative, that was not properly presented before. Wright & Miller treat the reread instruction as reopening the matter entirely, but the case law is sparse, and we are less certain that any blanket rule governs. *See generally* 9A C. Wright & A. Miller, *Federal Practice and Procedure* § 2553, at 416 (1995).

In all events, the new request made here at the time of rereading *repeated* the original unjustified request that the entire disorderly conduct statute be read to the jury. This time defense counsel enlarged the number of specific offenses for which he claimed to find support in the evidence, referring to tumultuous behavior, refusing to obey a lawful order,

making obscene remarks and obstructing traffic—"all of which [he said] there is testimony on." But once again, the request that the entire statute be read is far broader than anything to which counsel was entitled.

It is possible, with great generosity, to construe defense counsel's oral objections—both at the time of the original instruction and at its rereading—as an alternative request to charge the jury only as to the specific disorderly conduct provisions for which the defense claimed there was evidence (*e.g.,* refusal to obey a lawful order). Standing alone, this would not be enough because it is counsel's obligation to communicate clearly with the judge in seeking instructions, *Scarfo,* 54 F.3d at 947, and counsel's request was far from clear. On the other hand, there was some indication that the trial judge did consider whether other portions of the disorderly conduct statute should be read and thus was not entirely misled by the garbled objection.

■ Even if we treated the request for a more limited instruction as properly preserved (and this is a stretch), the failure to give the more limited instruction was patently harmless in this case. *Vera–Lozano v. International Broadcasting,* 50 F.3d 67, 71 (1st Cir.1995). Our reason is not lack of evidence. Although we can understand the trial judge's doubts on this point, Sheehan can make a colorable claim that even his own testimony supported the conclusion that Parker yelled obscenities, refused to move promptly out of the street, or both. When one adds fragments of consonant testimony from other officers, there are at least two provisions of the disorderly conduct statute under which Parker could have been charged, apart from excessive noise.

What persuades us that the error (if any) is harmless is this: Parker on the one hand and the police on the other gave coherent but directly conflicting versions of the events relating to Parker. Those versions were each of a piece: Sheehan, with some support from other officers, said that Parker had been standing in the street yelling at police, used swear words, and did not promptly obey an order to move onto the sidewalk and shut up. Parker's version, supported by other wit-

nesses, is that she had been standing behind one of the parked cars, had caused no disturbance and had done nothing more than make a properly phrased request to the officer to accompany her husband.

The jury heard all this testimony from the witnesses, and obviously accepted Parker's version of events. It is to us inconceivable that the jury would have decided this conflict of *fact* in favor of the defense if only it had been told that several other provisions of the disorderly conduct might also have been violated if the police testimony were accepted. The main thrust of Sheehan's testimony was Parker's standing in the street yelling, despite his efforts to get her to stop; the other violations were at best ancillary. There is no plausible way that this jury, having rejected the essence of the police testimony, would or could nevertheless have found in Sheehan's favor based on a slightly fuller account of what the statute provided.

Our conclusion is not based on any judgment of our own as to what the evidence proved to have happened. Although Parker's brief portrays the police engaged in something close to a police riot, there is some indication that others in Parker's party may have been at least partly at fault for the disturbance. But the evidence was certainly adequate to support the jury verdict in favor of Parker on her own claim of wrongful arrest, and the verdict was not affected by the omission of a more complete instruction on disorderly conduct.

■ The defense brief also contends that the district court erred in failing to give an instruction, in relation to the state-law claims made by Parker, that the police were privileged to use reasonable force to prevent perceived harm to officers or the public. Although the privilege instruction was requested by the defense, no proper objection to its omission was made after the district court gave its charge and omitted the requested paragraph. In this instance, the failure to object properly is beyond dispute. The omitted instruction did not lead to a miscarriage of justice, so there is no basis for a claim of plain error under *United States v. Olano*, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

Defendants have urged, contingently, that the new trial they request should be limited to liability. Parker has filed a contingent cross appeal urging that in any new trial, she should be allowed to introduce additional evidence in her favor—*e.g.*, that the police sought to obtain a release from her—which the district court did not permit her to offer in the original trial. Because we affirm the judgment in favor of Parker, these contingent requests need not be reached.

*Affirmed.*

## APPENDIX

**RSA 644:2 Disorderly Conduct.** A person is guilty of disorderly conduct if:

I. He knowingly or purposely creates a condition which is hazardous to himself or another in a public place by any action which serves no legitimate purpose; or

II. He:

(a) Engages in fighting or in violent, tumultuous or threatening behavior in a public place; or

(b) Directs at another person in a public place obscene, derisive, or offensive words which are likely to provoke a violent reaction on the part of an ordinary person; or

(c) Obstructs vehicular or pedestrian traffic on any public street or sidewalk or the entrance to any public building; or

(d) Engages in conduct in a public place which substantially interferes with a criminal investigation, a firefighting operation to which RSA 154:17 is applicable, the provision of emergency medical treatment, or the provision of other emergency services when traffic or pedestrian management is required; or

(e) Knowingly refused to comply with a lawful order of a peace officer to move from any public place; or

III. He purposely causes a breach of the peace, public inconvenience, annoyance or alarm, or recklessly creates a risk thereof, by:

(a) Making loud or unreasonable noises in a public place, or making loud or unreasonable noises in a private place which can be

heard in a public place or other private places, which noises would disturb a person of average sensibilities; or

(b) Disrupting the orderly conduct of business in any public or governmental facility; or

(c) Disrupting any lawful assembly or meeting of persons without lawful authority.

IV. In this section:

(a) "Lawful order" means:

(1) A command issued to any person for the purpose of preventing said person from committing any offense set forth in this section, or in any section of Title LXII or Title XXI, when the officer has reasonable grounds to believe that said person is about to commit any such offense, or when said person is engaged in a course of conduct which makes his commission of such an offense imminent; or

(2) A command issued to any person to stop him from continuing to commit any offense set forth in this section, or in any section of Title LXII or Title XXI, when the officer has reasonable grounds to believe that said person is presently engaged in conduct which constitutes any such offense.

(b) "Public place" means any place to which the public or a substantial group has access. The term includes, but is not limited to, public ways, sidewalks, schools, hospitals, government offices or facilities, and the lobbies or hallways of apartment buildings, dormitories, hotels or motels.

V. Disorderly conduct is a misdemeanor if the offense continues after a request by any person to desist; otherwise, it is a violation.