David B. FITE, Plaintiff, Appellant,

v.

DIGITAL EQUIPMENT CORPORATION, Defendant, Appellee.

No. 99–1935.

United States Court of Appeals, First Circuit.

Heard Sept. 8, 2000.

Decided Nov. 13, 2000.

**4**

Christopher G. Mackaronis with whom Laura C. Fentonmiller and Bell, Boyd & Lloyd were on brief for appellant.

Daniel J. Jackson with whom David C. Casey and Bingham Dana LLP were on brief for appellee.

Before TORRUELLA, Chief Judge, BOUDIN and LYNCH, Circuit Judges.

BOUDIN, Circuit Judge.

On October 11, 1994, appellant David Fite was fired by the appellee Digital Equipment Corporation[1] after twenty years of employment. Fite had begun working for Digital as a controller in 1974 and was at first steadily promoted. But in 1986, Fite's job performance declined so far that he was asked to leave his department; he was given *ad hoc* assignments while searching for another permanent position at the company. In June 1988, at a supervisor's suggestion, Fite took a paid medical leave of absence.

Unbeknownst to Digital, the reason for Fite's poor performance was his addiction to cocaine. Two months into his leave, Fite checked himself into a drug addiction treatment program; he was treated and apparently did not use drugs illegally after 1988. Upon returning to Digital in early 1989, Fite informed his supervisor that he was a drug dependent in the process of recovery. Digital says that it sought to accommodate Fite's disability by providing him structured work with identifiable objectives and flexible working hours.

---

1. Digital, a computer manufacturer, was a wholly-owned subsidiary of Compaq Computer Corporation until December 31, 1999, when Digital was dissolved and Compaq assumed all of its assets and liabilities. For convenience, we refer to the appellee throughout as "Digital."

After a year and a half of temporary jobs, Fite was placed in a permanent position in September 1990 with Digital's financial management quality program group in Merrimack, New Hampshire, a location proximate to Fite's treatment center. In the first months, Fite's new supervisor, Bianca Lapham, rated Fite's work as "substandard," and in June 1991, Fite filed his first complaint with the Equal Employment Opportunity Commission ("EEOC") and with the Massachusetts and New Hampshire anti-discrimination commissions. In each instance, he alleged that he was being denied consideration for other jobs because of his age (then fifty-three) and disability (chemical dependency). Lapham gave Fite better evaluations in 1992 and 1993, but Fite filed another complaint with EEOC and both state agencies in August 1992, charging that Digital had retaliated against him for filing the previous complaint.

In August 1994, EEOC sent Digital copies of two documents that Fite's attorney had recently submitted to EEOC to support Fite's complaints. The first was a print-out of an e-mail message purportedly sent on August 9, 1990, by Lapham to her supervisor mentioning "the old, tired transfer" with " 'quote' problems," which Fite asserts to be a reference to him. The second was a print-out of an April 9, 1992, e-mail message sent by Fite to co-worker Richard Cerra, into which Fite had imported the text of another e-mail allegedly sent the previous day from Lapham to Fite, urging him to take early retirement because "[a]t your age and as a result of your admitted addiction[,] you will not be con-sidered for any positions of responsibility in the finance organization."

Digital investigated the e-mails and concluded that they were fabricated.[2] When Digital confronted Fite, he denied concocting the documents and allegedly threatened to expose Digital officers in cocaine dealing. Digital fired Fite on October 11, 1994, citing the forged e-mails. Fite responded with the present lawsuit. In it he alleged that Digital had violated federal and Massachusetts laws by firing him to retaliate for his complaints of discrimination and because he was old and chemically dependent.[3]

On Digital's motion for summary judgment, the district court dismissed Fite's state-law discrimination claims for failure to file a timely complaint with the Massachusetts Commission. Following a trial on the remaining claims, the jury found separately for Digital on each of Fite's federal discrimination claims and on each of his federal and state claims for retaliation. On appeal, Fite challenges the court's partial summary judgment and its instructions to the jury on the claims that were tried.

The district court dismissed the state-law discrimination claims on the ground that Fite had not filed a complaint with the state agency "within six months after the alleged act of discrimination," *Mass. Gen. Laws* ch. 151B, § 5, itself a precondition under state law for bringing an action in court, *id.* § 9. Although Fite had filed complaints with the Massachusetts commission in 1991 and 1992, these related to denial of promotion and to retaliation; and the district court thought that Fite should have filed an amendment or a new complaint with the Massachusetts commission to pre-

---

**2.** Among other evidence of fabrication, Digital said that the 1990 message could not be found on the company's e-mail server and that the 1992 message was on the server as part of text in the message from Fite to Cerra but *not* as an independent e-mail from Lapham to Fite. Further, there were certain stylistic (*e.g.,* " 'quote' problems") and grammatical (*e.g.,* misplaced periods) idiosyncrasies in the supposed Lapham messages common to other messages that Fite had written.

**3.** Age Discrimination in Employment Act, 29 U.S.C. §§ 623(a)(1)-(a)(2), 623(d) (1994); Americans with Disabilities Act, 42 U.S.C. §§ 12112(a)-(b), 12203(a)-(b) (1994); *Mass. Gen. Laws* ch. 93, §§ 102, 103 (1998) (age); *Mass. Gen. Laws* ch. 151B, §§ 4(4), 4(4A), 4(16) (1998) (disability).

serve his claim that his discharge reflected unlawful discrimination.

On appeal, Fite says that he did not have to file a new complaint at all because the firing was simply a continuation of the prior "pattern or practice of discrimination." Further, he says that any necessary amendment was supplied by a letter from his lawyer to the EEOC on September 28, 1994, amending the pending federal complaint to add a charge of constructive discharge, Fite having anticipated his actual discharge two weeks later; the letter also asked that the amendment be forwarded "to the appropriate state agency, as necessary." Finally, because the Massachusetts commission had previously told Fite that his earlier charges were being investigated by the EEOC, Fite says that Massachusetts' six-month filing period should have been deemed tolled. *See Christo v. Edward G. Boyle Ins. Agency,* 402 Mass. 815, 525 N.E.2d 643, 645 & n. 1 (Mass.1988).

■ The arguments raise a number of issues of some complexity. In particular, the extent to which filing of the complaint with the EEOC should, under a worksharing agreement between the agencies, be deemed to constitute a filing with the Massachusetts commission is an issue on which this court specifically reserved judgment in *EEOC v. Green,* 76 F.3d 19, 23 & n. 6 (1st Cir.1996). We see no reason to reenter this morass, since it is perfectly clear that, even if Fite's state discrimination claims should not have been dismissed on partial summary judgment, any such mistake was harmless, given the jury's verdict in Digital's favor on the federal discrimination claims addressed to the very same discharge.

Broadly speaking, the federal and Massachusetts statutes governing discrimination for age and disability are similar.[4] Accordingly, timely complaints having been made to the EEOC with respect to the federal discrimination claims, Fite was able to present his full discrimination case to the jury based on the federal statutes, and the jury rejected those claims on the merits. Unless there was a pertinent difference in standards, or some other advantage to proceeding under the state scheme, failure to charge the jury under the state statutes, even in error, was harmless. *See Wills v. Brown Univ.,* 184 F.3d 20, 30 (1st Cir.1999). *See generally* 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* §§ 2881–83, 2888 (2d ed.1995).

In the original briefs on this appeal, Fite plausibly argued that at the time of trial, state law was more favorable to plaintiffs than was federal law in situations where the employee presents a *prima facie* case of discrimination, the employer offers a non-discriminatory reason for the adverse action, and the jury finds that explanation to be pretext. Under federal law, a pretext finding did not automatically compel a verdict in favor of the plaintiff; the jury still had to conclude that this adverse action was based on discriminatory motive. *Dichner v. Liberty Travel,* 141 F.3d 24, 30–31 (1st Cir.1998).

By contrast, Massachusetts was regarded as following a "pretext only" rule under which "a plaintiff who has established a *prima facie* case and persuaded the trier of fact that the employer's articulated justification is not true but a pretext, *is entitled to judgment.*" *Blare v. Husky Injection Molding Sys. Boston, Inc.,* 419 Mass. 437, 646 N.E.2d 111, 116 (Mass.1995)(emphasis added). Unfortunately for Fite, less than a month after his reply brief was filed in this court, the Massachusetts Supreme Judicial Court ruled that its "entitled to judgment" language in *Blare* produced a result that the court had "never intended." *Abramian v. President & Fellows of Harvard Coll.,* 432 Mass. 107, 731

---

4. *Compare* 29 U.S.C. §§ 623(a)(1)-(a)(2), 623(d), *with Mass Gen. Laws* ch. 93, §§ 102, 103 (age discrimination), *and* 42 U.S.C. §§ 12112(a)-(b), 12203(a)-(b), *with Mass. Gen. Laws* ch. 151B, § 4(16) (disability discrimination).

N.E.2d 1075, 1085 (Mass.2000). To this extent, *Blare* was effectively disavowed.

■ In our view, federal and Massachusetts law are now generally aligned on the pretext issue. In *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), the Supreme Court made clear that "the falsity of the employer's explanation" may permit the jury to infer a discriminatory motive but does not compel such a finding. *Id.* at ——, 120 S.Ct. at 2108. This is also where *Abramian* leaves Massachusetts law. Obviously whether in a particular case a *prima facie* showing of discrimination and the disbelieved pretextual explanation make a stronger or weaker case for the plaintiff depends very heavily on the facts. *See Thomas v. Eastman Kodak Co.*, 183 F.3d 38, 57–58 (1st Cir.1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 1174, 145 L.Ed.2d 1082 (2000).

Following the decisions in *Abramian* and *Reeves,* Fite and Digital submitted supplementary briefs to this court. Fite properly conceded that the federal and state standards are the same. But he asserted in his supplemental brief that *Reeves* is more generous to plaintiffs than First Circuit law as it stood prior to *Reeves*; he said that this court previously followed a so-called "pretext plus" standard in which the jury was forbidden from inferring discrimination from a finding that the employer's explanation was pretext. Fite argued that *Reeves* itself undermines the jury verdict.

This claim misunderstands this court's pre-*Reeves* law. As we explained in *Dichner,* the label "pretext plus" has been used by us as a reference back to the ultimate touchstone, namely, improper motive; it does not, "necessarily require the introduction of additional evidence" beyond the prima facie case coupled with a finding of pretext. 141 F.3d at 30. *Accord Lattimore v. Polaroid Corp.*, 99 F.3d 456, 465 (1st Cir.1996)("pretext [alone] 'may' be sufficient") (quoting *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 511, 113 S.Ct. 2742,

125 L.Ed.2d 407 (1993)); *Rodriguez–Cuervos v. Wal–Mart Stores Inc.*, 181 F.3d 15, 22 n. 5 (1st Cir.1999) (same evidence may support pretext finding and wrongful motive).

■ In all events, the jury instructions given by the district court made no mention of any such "pretext plus" requirement either in terms or in substance. Fite is thus reduced to arguing that the jury should have been told affirmatively that a *prima facie* case, coupled with finding of pretext, would permit the jury to infer discrimination. While permitted, we doubt that such an explanation is compulsory, even if properly requested. *See White v. New Hampshire Dep't of Corr.*, 221 F.3d 254, 263–64 (1st Cir.2000). *But see Smith v. Borough of Wilkinsburg,* 147 F.3d 272, 279–80 (3d Cir.1998). In any event, no such timely request was made by Fite so the claim was not preserved. *Parker v. City of Nashua,* 76 F.3d 9, 14 (1st Cir. 1996).

■ What has been said also disposes of Fite's other original claim of error on appeal, namely, that the district court failed to instruct the jury in accordance with *Blare* on the state law retaliation claim. Fite's supplemental brief admits that after *Abramian, see* 731 N.E.2d at 1087, the requested "entitlement" instruction does not accord with Massachusetts law, but Fite claims that the jury should have been told that retaliation was a permissible inference in the finding of pretext. Once again, the request was not made at trial and has therefore been forfeit.

■ It may seem harsh to tax counsel and client with failures to anticipate new case law or to require objections in the face of then-existing precedent. Yet, it is easy to overestimate the extent to which juries are influenced by subtleties in instructions concerning pretext, however much they may tantalize experts. *See Achor v. Riverside Golf Club,* 117 F.3d 339, 340 (7th Cir.1997). In those rare

cases where a claim of error has not been duly preserved but a miscarriage of justice is threatened—a threat not remotely present in this case—it is open to the reviewing court to notice the error under the plain error standard. *Parker*, 76 F.3d at 14.

*Affirmed.*