**Gerald L. ACHOR, Plaintiff–Appellant,**

v.

**RIVERSIDE GOLF CLUB and Robert White, Defendants–Appellees.**

No. 96–3520.

United States Court of Appeals, Seventh Circuit.

Argued May 30, 1997.

Decided June 24, 1997.

Claudia Oney, Danielle L. Weiss (argued), Chicago, IL, for Plaintiff–Appellant.

Robert M. Chemers, Scott L. Howie (argued), John J. Walsh, III, Pretzel & Stouffer, Chicago, IL, for Defendants–Appellees.

Before EASTERBROOK, RIPPLE, and MANION, Circuit Judges.

**340**

EASTERBROOK, Circuit Judge.

About 90 pounds of meat vanished from a cooler at the Riverside Golf Club one evening. There were no signs of forced entry, and nothing else was missing; this was an inside job. Robert White, the Club's manager, concluded that heads would roll, and he feared that unless he found the culprit the severed neck would be his own. Four people in addition to White had keys to the meat cooler. Gerald Achor, a bartender, was responsible for locking the Club at night, and as the last employee on the premises he was in the best position to make off with such cumbersome booty. White discussed the theft with each of the other four key-holders sequentially, ending with Achor. During the meeting, Achor turned in his keys; he left the Club, never to return. Achor contends that White asked him to take the blame, because he was the oldest of the five key-holders and had the best pension, and that when he refused he was fired; White contends that Achor resigned to avoid investigation. This suit under the Age Discrimination in Employment Act turns on who told the truth. If Achor quit, the Club prevails; if White sacked him because of his age, then Achor wins.

■ Unfortunately, the magistrate judge (who the parties agreed could conduct the trial and enter judgment in the district judge's stead, see 28 U.S.C. § 636(c)(1)) gave the jury a set of instructions much too complex for a swearing contest. The judge instructed the jury at length that there are two ways to prove allegations of discrimination, "direct" and "indirect." Each, according to the instructions, requires the plaintiff to prove some number of "essential elements" (three for one method, four for the other) and added that "[i]f the plaintiff has failed to prove one or more of these facts, you must find for the defendant." This naturally posed the question, which the instructions did not address: Who wins if the plaintiff shows the elements of one method, but not of the other? Long instructions also set up the possibility of disagreements over matters that may be terminological but could be substantive. Here the parties locked horns on the question whether the fourth element of

the indirect method should be "[a] younger person was hired in plaintiff's place" (the Club's proposal) or "[p]laintiff was replaced by a younger person" (Achor's proposal). The judge sided with the Club. He also gave four instructions about the doctrine of at-will employment in Illinois, which does not excuse age discrimination and was otherwise of tangential relevance. One of these instructions unhelpfully told the jury that "[a]n employment-at-will relationship gives an employer the right to terminate the employment at any time, subject to Section 623 and 631 of Title 29 of the United States Code." Even lawyers do not have 29 U.S.C. §§ 623 and 631 memorized. Although another instruction quotes these parts of the ADEA, a judge should tell jurors what their practical tasks are under the law, rather than providing raw legal texts for jurors to digest.

■ None of this was necessary. After some preliminaries, the judge told the jury:

[I]t is Plaintiff's burden to prove by a preponderance of the evidence that he was discharged by Defendant because of his age. In order for you to determine whether Plaintiff was discharged because of his age, you must decide whether Defendant would have fired Plaintiff had he been younger than 40 and everything else had remained the same.

This instruction, adapted from *Gehring v. Case Corp.*, 43 F.3d 340, 344 (7th Cir.1994), framed the only important question, making the remaining instructions otiose. Even this instruction could have been improved—by substituting the parties' names for the placeholders "Plaintiff" and "Defendant", and by deleting "than 40", because the ADEA forbids discrimination against older persons within the protected group as well as discrimination against all those over 40. See *O'Connor v. Consolidated Coin Caterers Corp.*, —— U.S. ——, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996); *Carson v. Bethlehem Steel Corp.*, 82 F.3d 157 (7th Cir.1996). But no one proposed emendations, and, once this instruction had been given, the remaining instructions did more to misdirect attention than to help the jury decide this cardinal issue.

What role do the direct and indirect means of proving discrimination, with their multiple sub-elements, play once the jury has taken up the question posed in the instruction we just quoted? A judge might usefully direct the jury's attention to some issues that support an inference one way or the other, such as whether the managers made remarks implying antipathy to older workers, or the age of a person's replacement, but factors that support an inference of discriminatory intent are neither necessary nor sufficient, as the instructions in this case imply. Cf. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Both the Supreme Court and this court have stressed that the elements that make up a "prima facie case" are for the judge, not the jury. See *Postal Service v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478, 1481–82, 75 L.Ed.2d 403 (1983); *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981); *Knox v. Indiana*, 93 F.3d 1327, 1334 (7th Cir.1996); *Gehring*, 43 F.3d at 343. A judge who concludes using this framework that the evidence could support a verdict for the plaintiff lets the jury deliberate; once the judge has made this decision, it is unnecessary to tell the jury to trace the same intermediate steps. Indeed, the distinction between "direct" and "indirect" methods is useful more as a heuristic than as a rule of law. See *Troupe v. May Department Stores Co.*, 20 F.3d 734, 736–37 (7th Cir.1994). "Direct" and "circumstantial" evidence are the same in principle. *Holland v. United States*, 348 U.S. 121, 140, 75 S.Ct. 127, 137–38, 99 L.Ed. 150 (1954). Judges frequently (and helpfully) tell juries to disregard the distinction between direct and circumstantial evidence they may absorb from the popular press. A jury that has received such an instruction is bound to be confused by a long distinction between "direct" and "indirect" methods of proof. Far better for the judge to tell the jury that it must decide whether age accounted for the adverse action and to relegate the other considerations to the status of clues, argued by counsel rather than made into "elements" of "methods."

Instructions from a pattern book, which these were, may be out of date and ill adapted to the case. Consider the parties' dispute about the use of "replaced" versus "hired" in the fourth "element" of one "method." It is easy to see why the parties cared. Once the judge decided to use the pattern instruction—a step neither side contested—the choice of words could matter a lot. Achor was "replaced" on the day he left by a young cocktail waitress, and for the next few weeks the bar was staffed by a number of people under 40; but a month later the Club hired a new bartender a few years Achor's senior. The Club preferred the word "hired" so that it could stress the age of the permanent replacement; Achor preferred the word "replaced" so that he could harp on the youth of the people who performed his job immediately after he left. Neither side noticed that in *O'Connor* the Supreme Court disapproved the concept behind this instruction. See our discussion of *O'Connor* in *Carson*. The statute's question is not the age of the replacement (or whether there was one) but whether the plaintiff would have kept his job had he been younger. Achor's claim shows the need for a tight focus on that issue. His theory of discrimination—that White fired the eldest suspect to save the skins of the four other key-holders, all under 40—is sound as a matter of legal principle, and was undercut by either version of the instruction, which directed attention to whether he was forced out to make room for a younger bartender.

■ As for the at-will instructions: we doubt that they should have been given, and we are confident that they should not have used the formal terminology they did, suited more to lawyers than to lay deciders. A judge might usefully tell a jury that "the age discrimination law does not protect an older employee from being fired without good cause." *Visser v. Packer Engineering Associates, Inc.*, 924 F.2d 655, 657 (7th Cir.1991) (en banc). This may help the jurors to concentrate on the question at hand: the effect of age, isolated from other influences. Whether a given employee serves at will, or for a term of years, or under a contract requiring "good cause" for discharge, is neither here nor there; violation of a "cause" requirement in a contract of employment

does not make a discharge unlawful under the ADEA. Contractual terms could be pertinent to a state-law claim of wrongful termination joined with the federal claim, but Achor did not make such a claim. (He did charge White with defamation, but the at-will instructions were no more pertinent to that theory than to the ADEA claim, and at all events were given in connection with the ADEA theory rather than the defamation theory.)

These observations do not lead to victory for Achor, however, because the fundamental flaws in these instructions were never brought to the judge's attention. See Fed. R.Civ.P. 51. (No doctrine of "plain error" applies to jury instructions in civil cases. *Deppe v. Tripp,* 863 F.2d 1356 (7th Cir.1988); *Hebron v. Touhy,* 18 F.3d 421 (7th Cir.1994).) Both sides consented to instructions on direct and indirect methods of proof; Achor would have been content with an instruction that the plaintiff must show that his replacement was younger; no one suggested to the district court that the distinction between age discrimination and good-cause requirements be rephrased in language comprehensible to jurors. The issues that the parties disputed in the district court were peripheral, and any error was harmless because the jurors must have understood their real task: to decide who was honest about what happened during the meeting that led to Achor's departure. That was what the trial, and the parties' arguments, had been about. The jurors evidently believed White, and it would be inappropriate to upset their verdict.

AFFIRMED.