**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 24 2002**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

JOHN H. TOWNSEND, III,

      Plaintiff-Appellant,

v.

LUMBERMENS MUTUAL CASUALTY
COMPANY, d/b/a KEMPER
NATIONAL INSURANCE
COMPANIES;

      Defendant-Appellee.

No. 00-3055

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

      Amicus Curiae

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D. C. No. 98-CV-2356-CM)**

Scott A. McCreight (Steven M. Sprenger and Korey A. Kaul with him on the briefs), of Sprenger & McCreight, L.C., Kansas City, Missouri, for Plaintiff-Appellant.

Paul R. Garry (Michael I. Leonard with him on the brief), of Meckler Bulger & Tilson, Chicago, Illinois, for Defendant-Appellee.

Susan L. P. Starr (C. Gregory Stewart, General Counsel, Philip B. Sklover, Associate General Counsel, and Vincent J. Blackwood, Assistant General Counsel with her on the brief), of the Equal Employment Opportunity Commission, Washington, D.C. as Amicus Curiae.

Before **BRORBY** and **HOLLOWAY**, Senior Circuit Judges, and **HENRY**, Circuit Judge.

**HOLLOWAY**, Senior Circuit Judge.

# I

Plaintiff-Appellant John H. Townsend III ("Townsend"), filed an action against his former employer, Defendant-Appellee Lumbermens Mutual Casualty Company, d/b/a Kemper National Insurance Companies ("Kemper"), alleging that he had been demoted and ultimately fired because of his race—African-American—and that he had been retaliated against for complaining of race discrimination, in violation of 42 U.S.C. § 1981 and Title VII. The trial judge granted summary judgment for Kemper as to the retaliation claim. Townsend survived Kemper's motion for summary judgment at the close of discovery as to Townsend's race discrimination claims concerning his demotion and firing . Trial of the case followed. Kemper then moved for judgment as a matter of law at the end of Townsend's case-in-chief and at the close of all evidence. These motions were denied and the case was submitted to the jury, which returned a verdict in favor of Kemper.

On October 22, 1999, Townsend filed a motion for a new trial on the grounds that the district court had erred in refusing to instruct the jury on the issue of pretext, and had

improperly allowed Kemper to bolster the credibility of a defense witness by eliciting testimony as to the truthfulness of the supervisor responsible for the decision to demote Townsend, in violation of Federal Rule of Evidence 608(a)(2). The district court, in an opinion reported at 192 F.R.D. 290 (D. Kan. 2000), denied the motion for a new trial. Townsend now appeals. In addition to Townsend's and Kemper's arguments, we also have before us an amicus curiae brief filed by the Equal Employment Opportunity Commission ("EEOC") in support of Townsend's position on the pretext instruction issue.

**II**

Townsend began working for Kemper in January 1986 as a personal lines marketing manager at its Overland Park, Kansas regional office. Townsend contended that after eleven years of employment with numerous merit raises and performance bonuses, as well as a promotion to the pilot position of personal lines unit manager, Kemper suddenly demoted him and then nine months later fired him. According to Townsend, Kemper told the Kansas Human Rights Commission that it demoted Townsend due to "poor performance" and that it subsequently fired him for the same reason. When asked for particulars, Kemper stated that after it demoted Townsend, he "stopped traveling," "became indifferent about his job," "did very little work," and failed to submit, as requested, an action plan on or before October 30, 1997, to improve his performance on his job.

Townsend contends that although he had objectively outperformed Chris Gold (Kemper's other personal lines unit manager), Kemper's regional vice president Robert Priest

rated Townsend a 3, lower than Gold's rating of 2.[1] Priest wrote that Gold was eligible for promotion if the opportunity became available, but that Townsend needed more experience before he would be eligible for promotion. In August 1996 Kemper promoted Gold and transferred him to Syracuse, New York. The personal lines unit manager position in the Overland Park office was filled by Linda Tobias, a white female.

Townsend contends that prior to October 1996 he had a professional working relationship with Priest; that at that time Kemper's Vice President, Peter Mooney, began pressuring Priest to improve his region's results; and that as a consequence he began to blame his problems on Townsend, including screaming at him and telling him to "shut up" at a business meeting. Townsend maintains that he was criticized by Priest for purportedly giving favorable treatment to black subordinates. Once, when Priest was upset with his black secretary, he reportedly asked Ms. Tobias, "What is it with these black people? They don't seem to want to work." III Aplt. App. 336. Priest denied making the statement, however. VI Aplt. App. 1236-37.

Townsend claims that in 1996 he again had better objective results than Gold, and that in recognition of these accomplishments he was awarded a $6,000 discretionary bonus, paid in April 1997. However, unlike in previous years, he did not receive an annual performance

---

[1]Kemper claims that Gold's performance on objective measures was better than Townsend's in 1995. Brief of Defendant-Appellee at 15. In addition, Priest testified that in 1995 Townsend was not managing his staff as well as Priest believed was necessary and that he did not have this concern with Gold. VI Aplt. App. 1210-11.

review.  Kemper claims that in 1996 Townsend's performance continued to deteriorate in that he experienced significant loss ratio problems, failed to increase sales in his territory, failed to take steps to ensure that rates in the states within his territory were being increased to remain in line with losses he was experiencing in those states, failed to show up on time for scheduled meetings, failed to submit reports in a timely manner, and failed to complete and sign his expense reports on a regular basis.  In addition, Kemper contends that a number of Townsend's employees experienced significant performance deficiencies that Townsend either did not address or did not address in an appropriate and timely fashion.  Finally, Kemper maintains that Townsend had difficulties interacting with certain independent insurance agencies in his territory that sold Kemper products, including most significantly an instance when Townsend organized and led a disastrous meeting attended by St. Louis agencies' representatives who became extremely angry toward Townsend and Kemper.

On January 22, 1997, Priest informed Townsend that his performance as a personal lines unit manager was deficient, and requested an "action plan," which Townsend provided on January 24.  On February 7, 1997, Priest met with Townsend and (contrary to Kemper's personnel policies) gave him no chance to improve but rather informed Townsend that he could either resign or be demoted to the position of marketing support specialist, a non-management position. Townsend accepted the marketing specialist position. Townsend was replaced as personal lines unit manager by Maureen O'Connor, a white female.

As a marketing support specialist, Townsend provided support for Tobias and

O'Connor. Townsend contends that from February 10, 1997 until September 11, 1997, neither Priest, Tobias, nor O'Connor raised any issue concerning his performance, and Tobias testified that Townsend displayed a positive attitude and that he never failed to meet her expectations. Likewise, Priest testified that Townsend was performing adequately, and O'Connor said that she had not reported or documented any complaints about him.

Townsend contends that he maintained an active travel schedule throughout this period. To show his extensive travel, he introduced into evidence a compilation of expense reports covering his tenure as marketing support specialist. Moreover, O'Connor, who had assisted in preparing Kemper's written position statement to the Kansas Human Rights Commission (claiming that Townsend has stopped traveling after his demotion), testified that that claim was false:

> Q:    Ma'am, in your opinion was the factual statement he stopped traveling true or false?
>
> A:    It is a false statement.

VI Aplt. App. 1385.

On August 31, 1997, Priest retired and was replaced by O'Connor. On September 5, 1997, O'Connor issued a memorandum directing Townsend to report to Tobias. On September 18, O'Connor gave Townsend a memorandum dated September 11, 1997, informing him that his performance as marketing support specialist was deficient, and downgrading his performance rating to 4 (probation). She directed Townsend to provide an action plan no later than October 30, 1997. O'Connor did not consult with either Priest or

Tobias before taking these actions. Kemper maintains that O'Connor's dissatisfaction with Townsend stemmed from her personal observation of his performance during the five months that she was a unit manager. Brief of Defendant-Appellee at 26, citing VI Aplt. App. 1293-1304.

On the Monday following receipt of O'Connor's September 11, 1997 memorandum, Townsend met with Tobias, his supervisor, to discuss his ideas for the action plan. He sent her an e-mail outlining his action plan, which Tobias testified she found satisfactory. Kemper contends that at the time Townsend met with Tobias, Tobias had already been removed from her job. Moreover, Kemper contends that the e-mail was not an action plan. Brief of Defendant-Appellee at 33, citing IV Aplt. App. 785.

On September 29, 1997, Tobias resigned from Kemper, leaving Townsend without a supervisor. On October 8, 1997, O'Connor sent Townsend a memorandum asking why she had not received the action plan, although it was not due until October 30, and scheduling a meeting on October 20. At this meeting (rescheduled for October 23), Townsend gave O'Connor a memorandum, together with the action plan outline that Tobias had previously approved, along with other materials previously requested by O'Connor. Kemper contends that although the e-mail was only an outline, Townsend told O'Connor in his memo that it was his action plan. Brief of Defendant-Appellee at 34, citing I Aplt. App. 98-99, III Aplt. App. 567, IV Aplt. App. 780-81. On October 29, 1997, O'Connor informed Townsend that his action plan was not sufficient, but did not offer suggestions on how to improve it. On

November 3, 1997, she terminated Townsend. Kemper maintains that she did this because of his "outright refusal" to submit an action plan. Brief of Defendant-Appellee at 36, citing III Aplt. App. 576. Kemper says that, as of October 29, O'Connor had not yet decided to terminate Townsend, III Aplt. App. 564, 571-72, and that she continued encouraging Townsend to submit an action plan until then, *id.* at 564, 572-73.

At trial, O'Connor testified that if Townsend had provided an acceptable action plan by October 30, he would have been retained. However, Barbara Maddux, Kemper's operations manager responsible for preparing its budget, testified that in early September 1997, O'Connor met with her and directed her to "eliminate" Townsend from the 1998 budget because Peter Mooney, Kemper's Executive Vice President of Personal Lines, disliked him. At trial, O'Connor disputed Maddux's testimony and testified that she "never deletes people off the budget." III Aplt. App. 579-80.

**III**

This suit is brought under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* Therefore, the district court had subject matter jurisdiction pursuant to 28 U.S.C. § 1331, and we exercise appellate jurisdiction pursuant to 28 U.S.C. § 1291.

Townsend argues for a new trial on two bases. First, he says that the district court erred in refusing to instruct the jury that, if it did not believe Kemper's explanation, it could

take this as evidence that Kemper's true motive for terminating him was discriminatory and could on this basis conclude—though it need not do so—that Kemper terminated Townsend for a discriminatory reason.[2]  Second, he argues that the district court erred in admitting character evidence to bolster the credibility of a witness, Townsend's former supervisor Mr. Priest, before the character of the witness was attacked, in violation of Fed.R.Evid. 608(a)(2).

## IV

Townsend first contends that it was reversible error for the district court not to instruct the jury that it could infer intentional discrimination if it found that Kemper's explanation was pretextual.  Townsend requested a pretext instruction identical to the Eighth Circuit Court of Appeals' Model Instruction 5.95:

> You may find that plaintiff's race was a motivating factor in defendant's decision to demote or discharge plaintiff if it has been proved by the preponderance of the evidence that defendant's stated reason(s) for its decisions are not the true reasons, but are a "pretext" to hide discriminatory motivation.

I Aplt. App. 74.  The record reflects that Townsend properly objected to the lack of an instruction on this theory by an objection made in conference, ruled on, and later timely renewed.  VII Aplt. App. 1428, 1460, 1539.

To determine whether the jury was adequately instructed on the

_____

[2]The EEOC in its amicus brief urges us to hold that such an instruction is required. The commission provides extensive citation and analysis of relevant case law.  Amicus Brief of EEOC at 4-16.

applicable law, we review the instructions in their entirety de novo to determine whether the jury was misled in any way. The instructions as a whole need not be flawless, but we must be satisfied that, upon hearing the instructions, the jury understood the issues to be resolved and its duty to resolve them.

*Medlock v. Ortho Biotech, Inc.*, 164 F.3d 545, 552 (10th Cir.) (citations omitted), *cert. denied*, 528 U.S. 813 (1999); *Sanjuan v. IBP, Inc.*, 160 F.3d 1291, 1300 (10th Cir. 1998). We have reviewed the jury instructions in their entirety, I Aplt. App. 125-58, and must agree with the Plaintiff-Appellant Townsend that the fundamental error he asserts occurred.

The district court here relied on an unpublished opinion, *Calhoun v. Ball Corp.*, No. 95-1272, 1997 WL 292129 (10th Cir. June 3, 1997), in determining to deny both parties' requests for a pretext instruction. *Calhoun*, for reasons discussed more fully *infra*, is not binding precedent nor does it persuade us. We find instructive our earlier published opinion in *Randle v. City of Aurora*, 69 F.3d 441 (10th Cir. 1995).

In *Randle*, we held that a plaintiff can prove illegal discrimination in two distinct ways, "either (1) *inferentially* by showing that the proffered reason is a pretext *for discrimination*; and/or (2) *directly* by offering direct evidence of discrimination." *Id.* at 453 (citation and footnote omitted). *Randle*, moreover, made clear that a plaintiff seeking to prove discrimination by demonstrating the pretextual nature of the defendant's explanation, must also "convince the jury not only that the reason proffered by the defendant was pretextual, but that the jury should infer that the defendant's pretext concealed a motive of discriminating against the plaintiff in violation of the civil rights laws." *Id.* at 453 n.18.

- 10 -

Although we have not yet expressly required a pretext instruction in employment discrimination cases, we have approved pretext instructions in similar contexts. *See, e.g., Mason v. Okla. Tpk. Auth.*, 115 F.3d 1442, 1454 (10th Cir. 1997) (approving an instruction that, if the jury disbelieved defendants' stated reasons for making an employment decision, it would be permitted but not required to infer that political patronage was a motivating factor in the plaintiff's termination); *Faulkner v. Super Valu Stores, Inc.*, 3 F.3d 1419, 1425 n.3 (10th Cir. 1993) (approving an instruction that if the plaintiff showed that the defendant's stated reasons for an employment decision was pretextual the jury could infer age discrimination).

The Second and Third Circuits, which have addressed this question, have presented strong reasons for requiring a pretext instruction. In *Smith v. Borough of Wilkinsburg*, 147 F.3d 272 (3d Cir. 1998), the Third Circuit ruled that such an instruction was required. In *Smith*, the plaintiff sued under the Age Discrimination in Employment Act (ADEA), alleging that the defendant had failed to renew his employment contract because of his age. At the close of the trial, the district court refused the plaintiff's request that the jury be instructed that it could infer intentional discrimination if it disbelieved the defendant's asserted reasons for not renewing the contract, and the trial judge instead emphasized that the jury's task was to determine whether the plaintiff's age was a determinative factor in the decision not to

renew.[3]  *Id.* at 274, 279.

The Third Circuit reversed.  Noting that "[i]t is black letter law that '[i]t is the inescapable duty of the trial judge to instruct the jurors, fully and correctly, on the applicable law of the case, and to guide, direct, and assist them toward an intelligent understanding of the legal and factual issues involved in their search for the truth,'" the court of appeals held that the judge's failure to give the instruction "left the jury inadequately informed of the applicable law."  *Id.* at 278 (quoting 9A Charles A. Wright and Arthur Miller, *Federal Practice and Procedure* § 2556 at 438 (2d ed. 1995)) (second alteration in original).  The Third Circuit noted that it had "steadfastly adhered to the principle that the objective of the charge is to clarify the issues in the light of the evidence to provide aid and guidance for the jury."  *Id.* at 279 (quoting *Atkinson v. Roth*, 297 F.2d 570, 574 (3d Cir. 1961)) (quotation marks omitted).  Likewise, the court of appeals held that the "trial court must ensure 'that the jury be given full and complete instructions by relating the law to the relevant evidence in the case.'"  *Id.* (quoting *Choy v. Bouchelle*, 436 F.2d 319, 325 (3d Cir. 1970)).  The Third

---

[3]The district court in *Smith* instructed the jury as follows:

[T]he dispositive fact that you must decide is whether Mr. Smith has proven by a preponderance of the evidence that his age was a determining factor in the borough's decision not to renew his employment contract.  He need not prove that his age was the sole or exclusive reason for the borough's decision not to renew the contract.  Age is a determining factor, however, if Mr. Smith's contract would have been renewed except for his age.

*Smith*, 147 F.3d at 279 (alteration in original).

Circuit therefore concluded:

> Applying these principles, it is clear that the jury must be given the legal context in which it is to find and apply the facts. It is difficult to understand what end is served by reversing the grant of summary judgment for the employer on the ground that the jury is entitled to infer discrimination from pretext . . . if the jurors are never informed that they may do so. Accordingly . . . *the jurors must be instructed* that they are entitled to infer, but need not, that the plaintiff's ultimate burden of demonstrating intentional discrimination by a preponderance of the evidence can be met if they find that the facts needed to make up the prima facie case have been established and they disbelieve the employer's explanation for its decision.

*Id.* at 280 (emphasis added).

Agreeing with the Third Circuit, the Second Circuit held in *Cabrera v. Jakabovitz*, 24 F.3d 372, 382 (2d Cir.), *cert. denied,* 513 U.S. 876 (1994), that the district courts must instruct juries that they can infer discriminatory intent from disbelief of defendants' explanations. The court of appeals stated: "[T]he jury needs to be told . . . [it] is entitled to infer, but need not infer, that this burden has been met if they find that the four [elements of the prima facie case] previously set forth have been established and they disbelieve the defendant's explanation." *Id.* (citation omitted).[4]

We are mindful that other circuits' opinions differ from the *Smith* and *Cabrera* requirements. The Seventh Circuit in *Gehring v. Case Corp.*, 43 F.3d 340, 343 (7th Cir. 1994), *cert. denied*, 515 U.S. 1159 (1995), explained that, while the plaintiff's proposed pretext instruction was

---

[4]*Cabrera*, a housing discrimination case, applied "the framework of burdens fashioned in Title VII cases." *Id.* at 383.

a correct statement of the law, . . . a judge need not deliver instructions describing all valid legal principles. Especially not when the principle in question describes a permissible, but not an obligatory, inference. Many an inference is permissible. Rather than describing each, the judge may and usually should leave the subject to the argument of counsel.

*Id.* at 343 (citations omitted). Likewise the Eleventh Circuit in *Palmer v. Bd. of Regents of the Univ. Sys. of Ga.*, 208 F.3d 969, 974-75 (11th Cir. 2000), said that it was not reversible error to refuse to give the plaintiff's requested pretext instruction. There, however, the plaintiff apparently presented a somewhat different argument for a new trial than does Townsend: "Specifically, Palmer suggests that the instructions given did not make it sufficiently clear that, having established a prima facie case, she did not need to present additional evidence in order to rebut the non- discriminatory reasons given by the [defendant]." *Id.* at 973.

The First and Eighth Circuits, in dicta, said they doubted that a pretext instruction was required. *Fite v. Digital Equip. Corp.*, 232 F.3d 3, 7 (1st Cir. 2000); *Moore v. Robertson Fire Prot. Dist.*, 249 F.3d 786, 790 (8th Cir. 2001). We must determine whether in the case at bar "the jury understood the issues to be resolved and its duty to resolve them," *Medlock*, 164 F.3d at 552, without being given a pretext instruction.

## V

We are not persuaded by Kemper's arguments. First, Kemper relies on this court's *unpublished* opinion in *Calhoun v. Ball Corp.*, 1997 WL 292129. In *Calhoun,* the plaintiff sued his employer under Title VII and § 1981, alleging that it had discriminated and

- 14 -

retaliated against him on the basis of race. After a jury verdict in favor of the defendant, the plaintiff appealed, arguing that the jury instructions "were misleading because they did not instruct the jury that it could find in his favor if it determined that [the defendant's] proffered reasons for not promoting him and, ultimately, terminating him were false." The panel disagreed. Noting that the plaintiff's ultimate burden under the *McDonnell Douglas* framework is to prove that the defendant had intentionally discriminated against him because of race, the panel ruled: "Although the jury's rejection of [the defendant's] proffered reasons for its actions would have allowed it to infer the ultimate facts of intentional discrimination or retaliation, we believe the instructions correctly conveyed the applicable law to the jury." *Id.* at *1 (internal citations omitted).

The *Calhoun* order and judgment does not require affirming the instant case. As an initial matter, *Calhoun*, as an unpublished decision, is not binding precedent in this case. This circuit's rules advise that citation of an unpublished decision is allowed if it "(1) it has persuasive value with respect to a material issue that has not been addressed in a published opinion; and (2) it would assist the court in its disposition." 10th Cir. R. 36.3 (B). However, the rule explains that "[c]itation of an unpublished opinion is disfavored." *Id*. Furthermore, paragraph (A) of the rule explains that "[u]npublished orders and judgments are not binding precedents . . . ." *Id.*

Furthermore, the *Calhoun* panel did not expressly consider this court's prior opinion in *Randle v. City of Aurora*, 69 F.3d 441, which held that "discriminatory animus *may be*

*inferred* from the simple showing of pretext." *Id.* at 451. The Supreme Court has felt it necessary to explain the reasoning behind such a permissible inference. Regarding the presumption in favor of a plaintiff created when the finder of fact rejects an employer's proffered explanation, the Court said:

> The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination . . . .

*St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993) (footnote omitted). The Court explained that although such a presumption permits a finding of discrimination, it does not compel such a finding. *Id.*

More recently, the Court has reaffirmed this reasoning as to jury findings in *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000). There the Court, "recognizing that the question facing triers of fact in discrimination cases is both sensitive and difficult, and that there will seldom be eyewitness testimony as to the employer's mental processes," *id.* at 141 (citations, internal quotation marks and brackets omitted), offered a detailed explanation of its reasoning:

> In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as "affirmative evidence of guilt.". . . Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially

since the employer is in the best position to put forth the actual reason for its decision.

*Id.* at 147 (citations omitted).

The other cases Kemper relies on are similarly unpersuasive. The only Tenth Circuit published opinion Kemper cites on this issue, *EEOC v. Prudential Fed. Sav. & Loan Ass'n*, 763 F.2d 1166 (10th Cir. 1985), held that the district court did not err in refusing to give the defendant's requested pretext instruction in an ADEA case. We find *Prudential* inapplicable here. In *Prudential* the requested instruction was materially different than the one at issue in this case. The *Prudential* court said that the instruction Prudential had requested would have misled the jury into thinking that the EEOC had to show that discrimination was the sole factor, whereas in fact the EEOC only had to show that it was *one* factor, and that it had made a difference. *Id.* at 1170. This concern is not present in the instant case, where Townsend's proposed instruction correctly stated the law.

Finally, and perhaps most significantly, we note that the Supreme Court in *Hicks* and *Reeves* cleared away a circuit split over the so-called "pretext-plus" theory which said that a jury's rejection of an employer's proffered explanation could not, by itself, suffice to show discriminatory motive. *See Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 343-44 (6th Cir. 1997) (discussing circuit split and its resolution by *Hicks*). Even after*Hicks*, federal courts had not yet fully abandoned the "pretext-plus" theory. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 197 F.3d 688, 693 (5th Cir. 1999) (holding that even if plaintiff's evidence showed that employer's proffered explanation was pretextual, the inference that employer had engaged

- 17 -

in unlawful discrimination would still not be permissible without more evidence showing that the employer's true motive was discriminatory). The Supreme Court granted certiorari and reversed the Fifth Circuit, explaining that *Hicks* forbade summary judgment for a defendant where the plaintiff, after presenting a prima facie case, presented evidence that the defendant's proffered explanation was pretextual. *Reeves*, 530 U.S. at 146-49. This is a difficult matter for courts, and would certainly be difficult for a jury. We consider the danger too great that a jury might make the same assumption that the Fifth Circuit did in *Reeves*. Therefore, we hold that in cases such as this, a trial court must instruct jurors that if they disbelieve an employer's proffered explanation they may—but need not—infer that the employer's true motive was discriminatory. Moreover we are persuaded by the position of the EEOC that the issue is whether in the absence of any instructions about pretext, "the jury found for the defendant because it believed the plaintiff could not prevail without affirmative evidence that his race was a motivating factor in the challenged employment decisions." [5]

---

[5]The dissent relies considerably on the arguments of counsel to take the place of instruction by the judge on this issue. However, the issue is not the mere fact that an inference of discrimination is possible. Rather, the permissibility of an inference of discrimination from pretext alone is a matter of law that the Supreme Court recently clarified in *Reeves*, 530 U.S. at 146-49. As we have held,

> *the judge is the governor of the trial, with the inescapable duty to fully and correctly instruct the jury on the applicable law of the case*, and to guide, direct and assist them toward an intelligent understanding of the legal and factual issues involved in their search for the truth.

*Tyler v. Dowell*, 274 F.2d 890, 897 (10th Cir.), *cert. denied*, 363 U.S. 812 (1960) (emphasis added). While counsel may be relied on to point out facts and suggest

Amicus Brief of EEOC at 10.

We do not hold that a pretext instruction is always required, but rather that it is required where, as here, a rational finder of fact could reasonably find the defendant's explanation false and could "infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." *Reeves*, 530 U.S. at 134. *See id.* at 134-35 (suggesting that there may be situations in which "no rational factfinder could conclude that discrimination had occurred" but declining to "resolve all such circumstances").

We are persuaded by the Third and Second Circuits' reasoning in *Smith* and *Cabrera*. Furthermore, we note that the Third Circuit indicated that failure to give a requested pretext instruction when requested could be reversible error. *Smith*, 147 F.3d at 280. We agree, and find that the instructions given here by the district court did not adequately convey the law to the jury, and that as a result the jury may have been misled. We therefore hold that the district court erred in refusing to give such an instruction here.

A faulty jury instruction requires reversal when (1) "we have substantial doubt

---

reasoning, the judge's duty to give an instruction on an applicable matter of law is clear. This is particularly true where, as here, the law goes to the heart of the matter.

We believe the dissent blurs the distinction between error and harmlessness. Argument of counsel can mitigate harm, as the dissent points out, but it cannot prevent a judge's failure to properly instruct the jury from being error. We also believe that harm arising from a jury's confusion is likely where, as here, the law the jury should have been instructed on has proven too difficult even for federal courts to discern without guidance from the Supreme Court. *See Reeves*, 530 U.S. 133, *rev'g* 197 F.3d 688. It is unreasonable, we think, to expect that jurors, aided only by the arguments of counsel, will intuitively grasp a point of law that until recently eluded federal judges who had the benefit of such arguments.

whether the instructions, considered as a whole, properly guided the jury in its deliberations," *Morrison Knudsen Corp. v. Fireman's Fund Ins. Co.*, 175 F.3d 1221, 1235 (10th Cir. 1999) (quotation omitted); and (2) "when a deficient jury instruction is prejudicial," *Coleman v. B-G Maintenance Management of Colo., Inc.*, 108 F.3d 1199, 1201 (10th Cir. 1997). "Thus, where a jury instruction is legally erroneous, we reverse if the jury might have based its verdict on the erroneously given instruction." *Id.* (quotation omitted).

Kemper contends that error in instructing the jury resulting from rejection of the pretext instruction was harmless, arguing that "the vast weight of the evidence submitted in this case supported the jury's verdict and the inclusion of a pretext instruction could not have changed the result." Brief of Defendant-Appellee at 40.

"Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Morgan v. Hilti,* 108 F.3d 1319, 1323 (10th Cir. 1997) (citations and internal quotation marks omitted). At trial a good deal of conflicting evidence was presented, requiring the jury to determine issues of credibility. Kemper, on the one hand, asserted that it "demoted and ultimately discharged [Townsend], not because of his race, but because of his poor performance and his failure to provide an action plan." VIII Aplt. App. 1634 (position statement of Kemper to Kansas Human Rights Commission). Evidence was offered, however, that O'Connor had already

instructed Maddux to eliminate Townsend from the budget long before his action plan was due, saying she would be eliminating him. III Aplt. App. at 588. This raised a sharp conflict in the evidence and the jury needed guidance by the requested pretext instruction to tell them that if they did not believe Kemper's explanation, they could draw an inference of discriminatory action. Townsend here had not "created only a weak issue of fact as to whether the employer's reason was untrue . . . ." *Reeves*, 530 U.S. at 148.

We find helpful an earlier order ruling on Kemper's motion for summary judgment.[6] I Aplt. App. 45-59. There the court held that Kemper had met its burden of articulating a nondiscriminatory explanation for the challenged employment actions. I Aplt. App. 55. The court also held that "a reasonable jury could conclude that Ms. O'Connor made the decision to terminate plaintiff's employment long before October 30, 1997 and, accordingly, that the discharge had nothing to do with plaintiff's action plan . . . ." *Id.* at 58. In so holding, the district judge relied on the closeness in time between a performance bonus given to Townsend and his demotion, evidence of Kemper's employees' statements about Townsend, and evidence that Kemper intended to "get rid of" Townsend well before he was actually dismissed. *Id.* at 57. We consider in addition evidence of Townsend's years of good service and Kemper's possibly disparate evaluation of Townsend and non-black employees. We hold that Townsend presented evidence from which the jury could reasonably have found

_____

[6]This order of Sept. 14, 1999, was issued by Judge Lungstrum. Later rulings were made by Judge Murguia, who presided at trial.

that Kemper's stated reasons for demoting and firing Townsend were pretextual, potentially entitling him to a finding of discrimination, on the theory of the Eighth Circuit's model pretext instruction, which Townsend requested.

Because the jury might have based its verdict on the erroneous instructions, this error requires reversal. *Coleman*, 108 F.3d at 1201.

## VI

Since we hold that the jury instruction error requires reversal, we need not reach the question of whether the court improperly admitted evidence of Mr. Priest's truthful character in violation of Fed.R.Evid. 608(a)(2).

## VII

Accordingly, we REVERSE the district court's denial of a new trial and REMAND this case to the district court for further proceedings consistent with this opinion.

No. 00-3055, *Townsend v. Lumbermens Mutual Casualty Company*

**HENRY**, Circuit Judge, concurring:


Judges Holloway and Brorby write persuasively; ultimately, I am swayed by Judge Holloway's opinion.

I conclude that, in cases such as Mr. Townsend's (and assuming, as here, that the plaintiff has lodged a proper request), our district courts should be required to instruct that, if the plaintiff-employee has proven by a preponderance of the evidence that the defendant-employer's stated reasons for demoting or discharging the employee are merely pretextual, the jury may – though need not – infer that the employer acted out of discriminatory animus.  While such an instruction describes a permissive inference – and while Judge Brorby is certainly correct that it cannot be true that a district court need instruct on every permissive inference available to a jury – the instruction here describes a particular permissive inference that many jurors might otherwise assume improper.

The district court instructed, correctly, that "[i]n order for plaintiff to recover on [his Title VII] claim, he must prove by the preponderance of the evidence that defendant intentionally discriminated against plaintiff, that is, plaintiff's race must be proven to have been a motivating factor in defendant's decision regarding plaintiff's demotion."  Aplt's App. vol. I, at 136 (Jury Instructions).  Unfortunately, a rational juror might very well have interpreted such an instruction to require affirmative proof of discriminatory

intent. In other words, in Mr. Townsend's own case, a rational juror might have concluded that, while Mr. Townsend successfully demonstrated that Kemper's proffered reason(s) for demoting or discharging him were merely pretextual (making quite likely the fact that Kemper acted out of discriminatory animus), Mr. Townsend necessarily could not prevail for having failed to offer any credible evidence directly suggesting a discriminatory animus.

Should one of Mr. Townsend's jurors have so concluded, that juror would stand in lofty – or at least legal – company: until quite recently, many federal courts had adopted just such an interpretation regarding the impermissibility of such an inference. *See, e.g., Reeves v. Sanderson Plumbing Prods., Inc.*, 197 F.3d 688, 693 (5th Cir. 1999) (per curiam) (reversing a jury verdict in favor of a plaintiff-employee despite the fact that the employee "very well may [have been] correct" that the defendant-employer proffered a pretextual reason for firing the employee; noting that the employee failed to present sufficient additional evidence that the employer acted out of discriminatory animus), *rev'd* 530 U.S. 133 (2000); *Gillins v. Berkeley Elec. Coop., Inc.*, 148 F.3d 413, 416-17 (4th Cir. 1998) ("While this evidence establishes that the employer's proffered reason is unpersuasive, or even obviously contrived, it is not in itself sufficient, under this Circuit's precedents, to survive [the employer's] motion for summary judgment. This court has adopted what is best described as the 'pretext-plus' standard for summary judgment in employment discrimination cases.") (internal citations, alteration, and quotation marks

omitted); *Nelson v. Boatmen's Bancshares, Inc.*, 26 F.3d 796, 801 (8th Cir. 1994) ("[T]o carry his ultimate burden of persuasion, [the employee] must do more than simply discredit an employer's nondiscriminatory explanation, he must also present evidence capable of proving that the real reason for his termination was discrimination . . .").[1]

Given the recent confusion regarding the nature of the proof necessary to prevail on a Title VII claim, I am persuaded that, absent the proposed instruction, jurors are left without adequate guidance as to the circumstances in which they may infer discriminatory intent. Thus, under similar facts and where requested, I believe the instruction must be given; I concur.

---

[1] Although a leading scholar has – appropriately – criticized the use of <u>McDonnell Douglas</u>-influenced instructions as confusing to juries, <u>see</u> DEBORAH C. MALAMUD, THE LAST MINUET: DISPARATE TREATMENT AFTER <u>HICKS</u>, 93 MICH. L. REV. 2229, 2323 (1995), another scholar has suggested that, precisely because of the general confusion surrounding the nature of the proof necessary in cases like Mr. Townsend's, "the pared-down instruction required by the Second and Third Circuits [and considered today by our circuit] should be given," WILLIAM R. CORBETT, OF BABIES, BATHWATER, AND THROWING OUT PROOF STRUCTURES: IT IS NOT TIME TO JETTISON <u>MCDONNELL DOUGLAS</u>, 2 EMPLOYEE RTS. & EMPLOYMENT POL'Y J. 361, 387-88 (1998).

No. 00-3055 – *Townsend v. Lumbermens Mutual Casualty Company*

**BRORBY**, Senior Circuit Judge, dissenting.

I respectfully dissent.

I agree with the majority's well-reasoned analysis concluding the jury could infer discrimination if it found Kemper's offered reasons for demoting and firing Mr. Townsend were simply a pretext for discrimination. I do not, however, agree the district court committed reversible error in refusing to give the requested pretext instruction. Instead, I conclude, although a pretext instruction would have been allowable, the district court did not commit reversible error in leaving the task of describing possible inferences to Mr. Townsend's counsel.

Conducting a *de novo* review of the jury instructions as a whole, we should reverse only if we have "'substantial doubt that the jury was fairly guided.'" *United States v. Guidry,* 199 F.3d 1150, 1156 (10th Cir. 1999) (quoting *United States v. Winchell*, 129 F.3d 1093, 1096 (10th Cir. 1977)). "[T]he exclusion of one correct statement of law does not necessarily constitute error. Rather, the instructions as a whole need only convey a correct statement of applicable law." *National Envtl. Serv. Co. v. Ronan Eng'g Co.*, 256 F.3d 995, 1004 (10th Cir.

2001) (quotation marks and citation omitted). "In considering the instructions on appeal, we take into account all the jury heard, and from the standpoint of the jury, decide not whether the charge was faultless in every particular, but whether the jury was misled in any way." *Id.* (quotation marks and citation omitted).

When, as here, the requested instruction concerns permissible rather than obligatory inferences to be drawn from the evidence, I see little need for a jury instruction. *Equal Employment Opportunity Comm'n v. Loral Aerospace Corp.*, No. 97-2333, 1998 WL 769820, at *1 (10th Cir. Oct. 29. 1998);[1] *Gehring v. Case Corp.*, 43 F.3d 340, 343 (7th Cir. 1994), *cert. denied*, 515 U.S. 1159 (1995). "Many an inference is permissible." *Gehring*, 43 F.3d at 343. Instead, the task of describing possible inferences can be left to counsel. *Id.* ("Rather than describing each [possible inference], the judge may and usually should leave the subject to the argument of counsel."). *See also Moore v. Robertson Fire Prot. Dist.*, 249 F.3d 786, 791 (8th Cir. 2001) (finding it significant "although the District Court elected not to submit a pretext instruction, it in no way prevented [plaintiff] from presenting his pretext arguments to the jury"); *Palmer v. Board of Regents of Univ. Sys. of Ga.*, 208 F.3d 969, 975 (11th Cir. 2000) (holding district

---

[1] While *Loral Aerospace* is not binding precedent, I find it persuasive and cite it in accordance with Tenth Circuit Rule 36.3(B).

court did not commit reversible error in refusing to submit a pretext instruction when "[b]oth sides presented and argued their cases with a correct understanding of the law").

I recognize the Supreme Court has held, in some circumstances, arguments of counsel are not an adequate substitute for jury instructions. *See Carter v. Kentucky*, 450 U.S. 288, 304 (1981) ("The other trial instructions and arguments of counsel that the petitioner's jurors heard at the trial of this case were no substitute for the explicit instruction that the petitioner's lawyer requested."); *Taylor v. Kentucky*, 436 U.S. 478, 488-89 (1978) ("[A]rguments of counsel cannot substitute for instruction by the court."). While the language of these cases seems powerful, the Supreme Court does sometimes allow argument from counsel in the place of a jury instruction. *See Shafer v. South Carolina*, 532 U.S. 36, 39 (2001) (quoting *Ramdass v. Angelone*, 530 U.S. 156, 165 (2000) (holding when "a capital defendant's future dangerousness is at issue, and the only sentencing alternative to death available to the jury is life imprisonment without possibility of parole, due process entitles the defendant 'to inform the jury of [his] parole ineligibility, either by a jury instruction *or in arguments by counsel*.'" (Emphasis added.)).

I believe *Carter* and *Taylor* are not applicable here because they involve

obligatory inferences – or more accurately, obligatory non-inferences.  In *Taylor*,
the Supreme Court held a trial court, when asked by a criminal defendant, must
instruct the jury the defendant is innocent until proven guilty.[2]  *Taylor*, 436 U.S.
at 490.  Similarly, *Carter* held the trial court, upon request, must instruct jurors
they may not draw adverse inferences from the fact the criminal defendant did not
testify at trial.  *Carter*, 450 U.S. at 305.  In contrast, the case before us involves a
permissive inference.

There are two reasons a trial court should treat requests for jury instruction
on obligatory inferences differently from requests for jury instruction on
permissive inferences.  First, because there are a finite number of obligatory
inferences, there is little danger trial courts will be burdened with excessive,
time-consuming requests for these instruction.  Further, there is little likelihood
the meat of the jury instructions will be diluted.  In contrast, there are a nearly
infinite number of permissive inferences.  *See Gehring*, 43 F.3d at 343.  If judges
are required to give jury instruction on all permissive inferences, drafting jury

---

[2]  The presumption of innocence is not "technically a 'presumption' – a mandatory
inference drawn from a fact in evidence.  Instead, it is better characterized as an
'assumption' that is indulged in the absence of contrary evidence."  *Taylor*, 436 U.S. at
483 n.12.  This distinction is, however, of minor importance in the case before us.
Whether the presumption is an inference or an assumption, the presumption is mandatory.
The jury must begin with a presumption of innocence.

instructions could become a drain on judicial resources. In addition, numerous jury instructions might distract jurors from their principle obligations. *See Fuller v. Phipps*, 67 F.3d 1137, 1141 (4th Cir. 1995) ("Simple instructions are normally to be preferred in order not to inject needless complexity and potential confusion where simplicity is far more appropriate."); *Achor v. Riverside Golf Club,* 117 F.3d 339, 340 (7th Cir. 1997) (holding an instruction telling jurors "you must decide whether Defendant would have fired Plaintiff had he [not been in a protected class] and everything else had remained the same" was sufficient because it "framed the only important question, making the remaining instructions otiose."). Second, obligatory inferences by their nature, involve clear-cut application of law to the facts. For this reason, there is little danger a obligatory inference instruction will create unfair bias in favor of the party requesting the instruction. Permissive inferences, on the other hand, are not clear-cut. For this reason, parties may argue over the wording of any instruction. *See id.* ("Long instructions also set up the possibility of disagreements over matter that may be terminological but could be substantive."). As in this case, each party may propose a jury instruction most favorable to its case. Rather than merely restating counsel's argument, jury instructions should be a neutral statement of the law. *See Chums,*

*Ltd. v. Snugz/USA, Inc.*, No. 94-4109, 1995 WL 503975, at *2 (Aug. 25, 1995).[3]

In some instances, a facially neutral permissive inference instruction might draw unwarranted attention to a small portion of the evidence presented at trial or mislead the jury as to the applicable law. *Cf., Cassino v. Reichhold Chem., Inc.,* 817 F.2d 1338, 1344 (9th Cir. 1987) ("To instruct on pretext ... might mislead the jury to believe that the plaintiff must prove that the employer's stated nondiscriminatory reason was false.). Therefore, a trial court should, after considering counsels' arguments and all that has taken place at trial, be able to refuse to offer a permissive inference instruction. This is not to say it would never be error for a trial court to refuse a permissive inference instruction. However, in determining whether a trial court has committed reversible error, I believe we should ask whether there was any jury confusion given the events at trial. We should not reverse unless the instructions, in light of all that has taken place at trial, misled the jury in any way.

In this case, Mr. Townsend's counsel went to great lengths to explain the substance of his requested pretext instruction. Throughout the trial, Mr. Townsend's counsel told the jury it should not believe Kemper's offered reasons for firing and demoting Mr. Townsend, but should instead conclude Kemper was

---

[3] I cite *Chums* in accordance with Tenth Circuit Rule 36.3.

lying to cover up racial discrimination. During opening argument, Mr. Townsend's counsel was not allowed to tell the jury what conclusions they should draw from the evidence. Instead, he told the jurors to ask themselves: "Is this witness' testimony consistent with documents or prior statements? ... What do I think really happened?" He then promised the jury "[a]t the end of the case, after you've examined the evidence with the eyes and the ears of a detective, you'll be ready to decide that if what we said took place is more likely than not what actually happened."

Mr. Townsend's counsel offered an even more aggressive closing argument. He told the jury it should return a verdict for Mr. Townsend because of "Kemper's repeated lies concerning its reasons for demoting and terminating [Mr. Townsend]." Citing the jury instructions, Mr. Townsend's counsel explained to the jury in discrimination cases "circumstantial evidence is going to be almost the whole case." He then told the jury: "[Y]ou can use your own common sense. And if from your common sense you know someone gives you a reason and you doubt that reason and you investigate it and find that they're not telling the truth, then they're trying to cover something up." He then vigorously argued Kemper was lying, calling Kemper's explanation for firing Mr. Townsend "100% fiction" and "a whopper." Commenting further on Kemper's explanation he argued, "[i]t

smells from the very beginning, it's contrary to common sense, there is a hidden agenda there and it's an unlawful one." He concluded by stating one of Kemper's witnesses "was here to stretch the truth and he stretched the truth beyond the breaking point."

Given this extensive argument, I believe the jurors knew they could infer discrimination if they thought Kemper's explanation was a pretext for discrimination. Thus, the jury instructions did not need to contain a pretext instruction to ensure the jury was adequately instructed and was not "misled in any way." *Ronan Eng'g*, 256 F.3d at 1004.

In this case, the majority favors reversal because pretext "is a difficult matter for courts." Consequently, the majority thought the danger was "too great" a jury might conclude the "rejection of an employer's proffered explanation could not, by itself, suffice to show discriminatory motive." *See also Smith v. Borough of Wilkinsburg*, 147 F.3d 272, 281 (3d Cir. 1998) ("Without a charge on pretext, the course of the jury's deliberations will depend on whether the jurors are smart enough or intuitive enough to realize [they may infer discrimination from pretext]."). I find this reasoning unpersuasive. While the question of how much weight should be given to evidence of pretext in discrimination cases has proven

thorny for legal professionals, I doubt the jury viewed this case as anything more than a trial to decide which party was telling the truth.

> Jurors do not sit in solitary isolation booths parsing instructions for subtle shades of meaning in the same way that lawyers might. Differences among them in interpretation of instructions may be thrashed out in the deliberative process, with commonsense understanding of the instructions in the light of all that has taken place at the trial likely to prevail over technical hairsplitting.

*Boyde v. California*, 494 U.S. 370, 380-81 (1990). Neither Mr. Townsend nor the majority have pointed to any instruction that might have led the jury to believe they were not allowed to infer discrimination from pretext. If a question had arisen over whether the inference of discrimination was permissible, jurors would have used their common sense and evaluated the instructions in light of arguments Mr. Townsend's counsel offered at trial. Thus, I conclude there is little chance the jury misunderstood the law.

In addition, I note the majority has chosen to follow a rule endorsed by only two of our sister circuits. *Smith*, 147 F.3d at 280 (holding pretext instruction is required); *Cabrera v. Jakabovitz*, 24 F.3d 372, 382 (2d Cir.) (explaining, in dicta, the district court needs to give the jury a pretext instruction), *cert. denied*, 513 U.S. 876 (1994). In contrast, four circuits appear to believe a pretext instruction is unnecessary. *Palmer,* 208 F.3d at 974-75 (holding district court's failure to give a pretext instruction was not reversible error); *Gehring*, 43 F.3d at 343

- 9 -

(holding pretext instruction was unnecessary); *Moore,* 249 F.3d at 790 n.9 ("We do not express any view as to whether it ever would be reversible error for a trial court to fail to give a pretext instruction, though we tend to doubt it."); *Fite v. Digital Equip. Corp.*, 232 F.3d 3, 7 (1st Cir. 2000) ("While permitted, we doubt that [a pretext instruction] is compulsory, even if properly requested.").

Furthermore, the majority opinion also conflicts with our unpublished opinion in *Calhoun v. Ball Corp.*, No. 95-1272, 1997 WL 292129 (10th Cir. June 3), *cert. denied*, 522 U.S. 955 (1997). Although *Calhoun* is an unpublished decision and therefore not binding precedent, I consider it useful in this case. *See* Tenth Circuit Rule 36.3(A), (B). The majority faults the *Calhoun* panel because it "did not consider this court's prior opinion in *Randle v. City of Aurora*, which held that 'discriminatory animus *may be inferred* from the simple showing of pretext.'" *See Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995). Because *Randall* was an appeal from summary judgment, it did not address whether a pretext jury instruction is permissive or obligatory. *Id.* at 452. It is true *Calhoun* never cites *Randle.* However, a close reading shows the *Calhoun* panel understood the legal principle in *Randle*. In *Calhoun*, the court held "[a]lthough the jury's rejection of [the defendant's] proffered reasons for its actions would have allowed [the jury] to infer the ultimate facts of intentional

discrimination or retaliation, we believe the instructions correctly conveyed the applicable law to the jury." *Calhoun*, 1997 WL 292129, at *1. I therefore see little reason to disregard *Calhoun's* holding.

In sum, I believe the jury was adequately instructed on the applicable law. The district court should not be required to catalogue permissible inferences that might be drawn from the evidence. This task can be easily accomplished by counsel, as demonstrated in this case. I therefore dissent.